IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Brief January 6, 2004

## STATE OF TENNESSEE v. MICHAEL ARMSTRONG

**Appeal from the Criminal Court for Shelby County**
**No. 00-00933     John P. Colton, Judge**

_____

**No. W2003-00317-CCA-RM-CD  - Filed May 21, 2004**

_____

On May 22, 2001, the defendant, Michael Armstrong, entered a plea of nolo contendere to the offense of operating a motor vehicle after having been declared a habitual motor vehicle offender and banned from driving.  He was sentenced to one year in the work house and one year of probation.  The defendant reserved a certified question for appeal pursuant to Tennessee Rule of Criminal Procedure 37(b)(2)(i).  This question concerns the admissibility into evidence of the defendant's statement to police that he had driven to the police station to report two cars stolen from his employer.  This statement was made in response to a police officer's question as to how the defendant had gotten to the station.  This question was asked after the police officer had found out the defendant was an habitual motor vehicle offender whose Tennessee driver's license was revoked, but before any Miranda warnings were given to the defendant.  The defendant's response to this question formed the basis of his arrest.  The trial court denied the defendant's motion to suppress concluding that the defendant was not in custody at the time he answered the officer's question.  We find that the record clearly indicates the defendant was not in custody at the time he admitted he had driven to the police station and that therefore no Miranda warnings were required.  The judgment of the trial court is therefore AFFIRMED.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID G. HAYES and THOMAS T. WOODALL, JJ., joined.

W. Mark Ward, Memphis, Tennessee, for the appellant, Michael Armstrong.

Paul G. Summers, Attorney General & Reporter; Braden H. Boucek, Assistant Attorney General; William L. Gibbons, District Attorney General; and Steve Hall, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Procedural History

When this appeal initially reached this Court a panel of this Court dismissed it upon a determination that the defendant had failed to reserve properly his certified question for review. However, the defendant obtained permission to appeal to the Tennessee Supreme Court and on February 5, 2003, that Court reversed the decision of this Court and remanded the case to this Court for a determination of the appeal on the merits. See State v. Armstrong, 126 S.W.3d 908 (Tenn. 2003). This Court ordered briefing on the merits of the appeal and the case is now properly before this Court.

Factual Background

The defendant was employed by Shelby Dodge, an automobile dealership in Memphis. Part of the defendant's job was to report inventory thefts to the Memphis Police Department. In carrying out this function, the defendant dealt with the officers of the auto theft division of the police department. There he encountered, among others, Sgt. Denny K. Smith. As part of the theft reporting process, Smith would routinely take the paperwork filled out by the defendant, verify the defendant's identification, and do computer searches in an attempt to verify the VIN numbers of the vehicles reported stolen.

Officer Smith noticed that although the defendant presented an Arkansas driver's license when asked for identification, police computers indicated he had a Tennessee address. Out of curiosity, Smith ran a computer check to see if the defendant had a Tennessee license as well. In doing so, Smith discovered that the defendant's Tennessee license had been revoked.

On April 20, 1999, the next time the defendant came to the police station to report stolen vehicles, Smith approached him and asked him how he had gotten to the police station. According to Smith the defendant replied "I drove down here. How the hell do you think I got down here?" Officer Smith left the defendant standing in the foyer for approximately fifteen minutes while he checked to see if the defendant's license was still revoked. When Smith discovered the license was still revoked he arrested the defendant.

Admissibility of Defendant's Statement

The defendant contends that the trial court erred in determining that he was not in custody at the time he was asked how he had gotten to the police station, and replied that he had driven there. The defendant maintains that Officer Smith stood between him and the door when he was asked this

question and that he did not feel free to leave thus making the asking of this question custodial interrogation.

In determining whether a person is in custody so that <u>Miranda</u> warnings must be given before questioning, the Tennessee Supreme Court, relying on United States Supreme Court precedent, hads adopted an objective test. The focus of the inquiry as to whether the defendant is in custody in on the question of whether under the totality of the circumstances, a reasonable person in the defendant's position would consider himself deprived of the freedom of movement associated with a formal arrest. <u>State v. Anderson</u>, 937 S.W.2d 851, 855 (Tenn. 1996). Some of the relevant factors that courts should consider include, but are not limited to the time and location of the interrogation; the duration and character of the questioning; the officer's tone of voice and general demeanor; the suspect's method of transportation to the place of questioning; the number of police officers present; any limitation on movement or other form of restraint imposed on the suspect during interrogation; any interactions between the officer and the suspect, including the words spoken by the officer to the suspect, and the suspect's verbal or nonverbal responses; the extent to which the suspect is confronted with the law enforcement officer's suspicion of guilt or evidence or guilt; and finally, the extent to which the suspect is made aware that he or she is free to refrain from answering questions or to end the interview at will. <u>Id</u>.

In <u>State v. Munn</u>, 56 S.W.3d 486 (Tenn. 2001); the Tennessee Supreme Court considered whether the defendant, Mr. Munn, was in custody when several of his <u>un-Mirandized</u> statements to police were videotaped and offered against him at his murder trial. The Court scrutinized the following factual scenario surrounding the interrogation of Mr. Munn:

> With these principles in mind, we turn to the facts of this case. After contact from the Murfreesboro Police, the defendant voluntarily agreed to go to the police station to clear up discrepancies the officers had found in his statement. The defendant and his family arrived at the police station at approximately 5 p.m. The interview was conducted in a 12 x 12 foot room marked "Felony Booking Room." Throughout the duration of the interview, the defendant talked with the officers while one or both of his parents was present; with the officers alone; and with one or both of his parents alone. After approximately 3 1/2 to 4 hours, the defendant was formally arrested.

> While talking to the officers alone, the defendant was vigorously questioned by the officers and at certain times, the defendant was even accused of not telling the truth or at least not telling the whole truth. The officers even told the defendant's mother, in the presence of the defendant, that they knew that the defendant had killed the victim. However, even though the officers were extremely inquisitive and often times accusatory, we agree with the Court of Criminal Appeals' observation that the officers' demeanor was always polite and courteous towards the defendant. The defendant was reminded throughout the interview that he was not under arrest and was free to leave at any time. However, on at least three occasions, the defendant

mentioned that he would like to come back the following Monday and talk to the officers when his parents were not present. On each occasion, it appears that the officers either changed the subject or kept pressing the defendant to tell the truth. Near the end of the interview, the defendant indicated that he thought he could go home and the officers advised him that he would be arrested that night. This is the first evidence in the record that the defendant wanted to leave the room and that he would be detained.

Although the question is close, considering the evidence as a whole, we agree with the Court of Criminal Appeals that the evidence in the record does not preponderate against the lower court's finding that the defendant was not in custody when he was interviewed by the officers.

We believe that the case sub judice presents a far less compelling picture of a custodial interrogation than the situation in Munn. In the instant case the defendant came to the police station as he had done many times in the past as part of his employment responsibilities. He had no idea he was under suspicion of criminal activity. He was allowed to remain in the station's foyer where he typically filled out stolen vehicle reports. During the fifteen minutes it took Officer Smith to confirm that the defendant's driver's license was revoked the defendant was apparently free to leave. The atmosphere was jovial and the questioning brief and non-threatening. Under these circumstances, we conclude that the record fully supports the trial judge's finding that the defendant was not in custody when asked how he had traveled to the police station. Therefore no Miranda warnings were required before asking him this question and in turn his reply is admissible in evidence against him.

Conclusion

In light of the foregoing, the judgment of the trial court is AFFIRMED.

_____
JERRY L. SMITH, JUDGE

-4-